FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 19, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JENNIFER C.,[1]

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

No. 4:26-cv-5032-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff Jennifer C. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits. Substantial evidence does not support the ALJ's finding that Plaintiff's work

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

activities did not constitute unsuccessful work attempts. Therefore, substantial evidence does not support the ALJ's non-disability determination based on the ALJ's finding that there was no continuous twelve-month period during which Plaintiff was unable to engage in substantial gainful activity. This matter is remanded for further proceedings.

## I. Background

Plaintiff filed her Title 16 application for benefits on May 20, 2022, and filed her Title 2 application for benefits on February 24, 2025, both alleging a disability onset date of November 2, 2021.[2] Plaintiff appeared for a hearing before ALJ David Skidmore in January 2025, at which Plaintiff and a vocational expert testified.[3] Plaintiff testified that she is disabled because of chronic pancreatitis, which causes episodic flares of pain throughout her body and associated nausea, vomiting, and other gastrointestinal issues.[4] She was employed

---

[2] Administrative Record (AR) 17, 252–60.

[3] AR 31–56.

[4] AR 43–47.

as a caregiver for assisted living residents but was not working at the time of the hearing because she was experiencing a pancreatitis flare.[5] She could work for two to four months at a time without issue, but then she would experience a flareup and be unable to work for extended periods of time.[6]

The ALJ issued a decision finding Plaintiff not disabled in March 2025.[7] At step one of the five-step evaluation for determining whether a claimant is disabled,[8] the ALJ found, based on earnings records from Plaintiff's caregiver job, there was no continuous twelve-month period during which Plaintiff had not engaged in substantial gainful activity.[9] The ALJ acknowledged that Plaintiff's earnings in the second and fourth quarters of 2023 did not rise to the level of substantial gainful

---

[5] AR 40–41.

[6] AR 44–47.

[7] AR 14–30.

[8] 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

[9] AR 20–22.

activity, and that Plaintiff did not work in the second quarter of 2024.[10] However, the ALJ determined that Plaintiff's work activity around those periods did not constitute unsuccessful work attempts because her impairments did not stop her from working or force her to reduce her work below the substantial gainful activity level.[11] Plaintiff, therefore, was not disabled.[12]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[13] Plaintiff now appeals to district court.[14]

## II. Standard of Review

When considering the ALJ's findings, the court is constrained to the reasons and supporting explanation offered by the ALJ.[15] The

---

[10] AR 21.

[11] AR 21–22.

[12] AR 22–23.

[13] AR 1–3.

[14] ECF No. 1.

[15] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[16] and such error impacted the nondisability determination.[17] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18]

---

[16] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[17] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[18] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d

## III. Analysis

Plaintiff argues the ALJ erred by denying her claim at step one because the ALJ made internally inconsistent findings[19] and erroneously found she did not make unsuccessful work attempts. She contends this case must be remanded for, at minimum, a full sequential analysis, but urges the Court to remand for an award of benefits. In response, the Commissioner argues no error occurred and that the ALJ correctly denied Plaintiff's claim at step one. The Commissioner contends that if the Court disagrees, then the proper remedy is to remand for further proceedings.

---

383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[19] Plaintiff's inconsistent-findings argument merely highlights an inconsequential error in a bolded heading in the ALJ's decision, where the ALJ mistakenly stated that Plaintiff engaged in substantial gainful activity from "July 2023 to March 2024" rather than from "July 2023 to September 2023, and January 2024 to March 2024," as the ALJ stated multiple times elsewhere, and as the record supports. *See* AR 20.

At step one of the sequential evaluation, a claimant is not disabled if she is "working and the work [she is] doing is substantial gainful activity."[20] "Substantial gainful activity is work activity that is both substantial and gainful."[21] "Substantial work activity is work activity that involves doing significant physical or mental activities."[22] "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized."[23] To meet the statutory definition of disability, the inability to engage in substantial gainful activity must have lasted or be expected to last for a continuous period of not less than twelve months.[24]

Earnings are the primary consideration when determining whether a claimant has engaged in substantial gainful activity.[25]

---

[20] 20 C.F.R. §§ 404.1520(b), 416.920(b).

[21] *Id.* §§ 404.1572, 416.972.

[22] *Id.* §§ 404.1572(a), 416.972(a).

[23] *Id.* §§ 404.1572(b), 416.972(b).

[24] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[25] 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1).

"Generally, if [the claimant] worked for substantial earnings, [the Commissioner] will find that [the claimant is] able to do substantial gainful activity."[26] Congress authorized the Commissioner to prescribe by regulation the criteria for determining when earnings demonstrate the ability to engage in substantial gainful activity.[27] The substantial gainful activity amounts for non-blind individuals were $1,350.00 per month in 2022, $1,470.00 per month in 2023, and $1,550.00 per month in 2024.[28]

---

[26] *Id.*

[27] 42 U.S.C. § 423(d)(4)(A) ("The Commissioner of Social Security shall by regulations prescribe the criteria for determining when services performed or earnings derived from services demonstrate an individual's ability to engage in substantial gainful activity.").

[28] *Monthly substantial gainful activity amounts by disability type*, Social Security Administration, https://www.ssa.gov/oact/cola/sga.html (last visited Sept. 30, 2026). *See* 20 C.F.R. §§ 404.1574(b)(2)(ii), 416.974(b)(2)(ii).

However, work activity above the level of substantial gainful activity will be considered an "unsuccessful work attempt," and not show that the claimant is capable of performing substantial gainful activity, if the claimant worked for six months or less and if her impairments forced her to stop working or to reduce her work below the substantial gainful activity level.[29] There must be "a significant break in the continuity" of the claimant's work before the claimant "began a work attempt that later proved unsuccessful."[30] The Commissioner "will not consider work [the claimant] performed at the substantial gainful activity earnings level for more than 6 months to be an unsuccessful work attempt."[31]

Here, Plaintiff's earnings records support the ALJ's findings of quarterly periods during which Plaintiff's average monthly earnings

---

[29] 20 C.F.R. §§ 404.1574(c)(1), (3), 416.974(c)(1), (3).

[30] *Id.* §§ 404.1574(c)(2), 416.974(c)(2).

[31] *Id.* §§ 404.1574(c)(4), 416.974(c)(4).

met the substantial gainful activity level,[32] which neither party disputes:

| Period | Total Earnings | Average Monthly Earnings | Substantial Gainful Activity Level? |
|---|---|---|---|
| Dec. 2022[33] | $3,449.00 | $3,449.00 | Yes |
| Jan.–Mar. 2023 | $5,948.00 | $1,982.67 | Yes |
| Apr.–June 2023 | $3,209.00 | $1,069.67 | No |
| July–Sep. 2023 | $5,268.00 | $1,756.00 | Yes |
| Oct.–Dec. 2023 | $3,039.00 | $1,013.00 | No |
| Jan.–Mar. 2024 | $8,422.00 | $2,807.33 | Yes |
| Apr.–June 2024 | $0.00 | $0.00 | No |
| July–Sep. 2024 | $7,178.00 | $2,392.67 | Yes |
| Oct.–Dec. 2024 | $8,984.00 | $2,994.67 | Yes |

[32] AR 20–22, 272–73, 305.

[33] Neither party disputes the ALJ's finding that Plaintiff was hired on December 4, 2022. *See* AR 20. The Court discusses a related potential error below.

The ALJ, therefore, correctly found that Plaintiff's earnings constituted substantial gainful activity in the first quarter of 2023, the third quarter of 2023, the first quarter of 2024, the third quarter of 2024, and the fourth quarter of 2024.[34]

The ALJ then addressed Plaintiff's argument that her work activities were unsuccessful work attempts as follows:

> The claimant did not work in the second quarter of 2024, and her earnings were not consistent with substantial gainful activity in the second and fourth quarters of 2023, but the evidence does not show that she actually stopped working because of her impairments during these quarters. SSR 84-25 indicates that when considering why a work effort ended or was reduced to the non-substantial gainful activity level, the Social Security Administration will not rely solely on information from the claimant.[35] Treatment records certainly show ongoing care for pancreatitis but do

---

[34] AR 21–22.

[35] SSR 84-25, Titles II and XVI: Determination of Substantial Gainful Activity If Substantial Work Activity Is Discontinued or Reduced—Unsuccessful Work Attempt, was rescinded on May 28, 2025, after the ALJ's decision. 90 Fed. Reg. 22557, 2025 WL 1769365, at *1 (May 28, 2025). The Administration explained that SSR 84-25 was "outdated" due to 20 C.F.R. §§ 404.1574(c), 416.974(c). *Id.*

> not support that symptoms or procedures related to pancreatitis consistently required her to stop working for months at a time. She was noted to be a frequent patient in the emergency room and was known to exhibit drug-seeking behavior (Exhibit B42F/38). On November 16, 2023, she reported that she recently quit her job and moved to Idaho but then returned to Washington; at that time, she was unemployed and was unsure if she wanted to return to work (Exhibit B39F/34). However, on December 7, 2023, she reported that she was returning to work the next day and that this had improved her mental health (Exhibit B39F/36). This evidence suggests that there were other reasons that the claimant stopped working or reduced work below substantial gainful activity, including quitting because of a brief move.
>
> The claimant has described performing activity that is substantial because it involved significant physical and mental activities and that is gainful because the claimant received pay for performing it, pursuant to 20 CFR 404.1572 and 416.972. The evidence simply does not support that the claimant stopped working in the second quarter of 2024 or reduced work below substantial gainful activity in the second and fourth quarters of 2023 because of her impairments. Therefore, this work activity does not constitute unsuccessful work attempts.[36]

The ALJ's explanation fails to identify substantial evidence supporting the finding that Plaintiff's work activities were not unsuccessful work attempts. That Plaintiff was a "frequent patient in

---

[36] AR 21–22.

the emergency room" would tend to support her pancreatitis impairments preventing her from working, unless, as the ALJ suggested, such visits were only for drug-seeking. But the ALJ referenced only one note of drug-seeking, wherein an emergency department provider noted in April 2024 that Plaintiff was "a frequent patient to the ED and is known to exhibit drug seeking behavior."[37] Even under the modest standard for what constitutes substantial evidence, this single note is inadequate and questionably relevant to why and when Plaintiff reduced her work, especially considering the plethora of surgical and emergency department records for pancreatitis treatment from around the times Plaintiff reduced her work.[38] Also,

---

[37] AR 12716.

[38] *See, e.g.*, AR 10509, 10534, 10542, 10553, 10561, 10577, 10585, 10590, 10593, 10601–04 (March and April 2023: records of surgical replacement of gastrojejunostomy tube for pancreatitis and follow-up visits for associated pain and gastrointestinal symptoms); AR 10097, 10118, 11894, 11937, 11945 (September through November 2023: records of emergency department visits for abdominal pain caused by

Plaintiff "quitting because of a brief move" is not substantial evidence because that says nothing about whether Plaintiff moved because of her impairments and/or the work difficulties caused by her impairments. In fact, the records referenced by the ALJ support an inference that Plaintiff quit due to her pancreatitis-treatment surgery on November 3, 2023, and returned in December because her work load improved.[39]

This error is consequential because it resulted in the ALJ finding no continuous twelve-month period during which Plaintiff had not engaged in substantial gainful activity and therefore the ALJ did not proceed past step one. If Plaintiff reduced her work below the substantial gainful activity level in the second quarter of 2023 because

---

pancreatitis leading up to surgery); AR 12541, 12700, 12710, 12769 (March and April 2024: records of emergency department visits for pancreatitis flareups following tube replacement with abdominal pain and gastrointestinal symptoms).

[39] AR 11767, 11769. *See also* AR 11894–95, 11901–02, 11909–10 (documenting surgery and post-procedure).

of her impairments, then Plaintiff's work above the substantial gainful activity level in the first quarter of 2023 might be considered an unsuccessful work attempt. Likewise, if Plaintiff reduced her work below the substantial gainful activity level in the fourth quarter of 2023 because of her impairments, then Plaintiff's work above the substantial gainful activity level in the third quarter of 2023 might be considered an unsuccessful work attempt. Also, if Plaintiff stopped working in the second quarter of 2024 because of her impairments, then Plaintiff's work above the substantial gainful activity level in the first quarter of 2024 might be considered an unsuccessful work attempt. In that case, there would be a continuous period of more than twelve months during which Plaintiff had not engaged in substantial gainful activity.

Additionally, citing two new-hire wage records that both indicate a hire date of "2023-12-04," the ALJ, seemingly erroneously, found Plaintiff was hired as a caregiver on December 4, 2022.[40] Although neither party raises the matter on appeal, this presumed error might

---

[40] AR 20 (citing AR 272–73, 305).

not be harmless. The ALJ consequentially did not calculate Plaintiff's average monthly earnings throughout the fourth quarter of 2022, and instead found Plaintiff earned $3,449.00 in December 2022, her highest monthly earnings in the record. But if Plaintiff also had earnings in October and/or November 2022—which the new-hire wage records showing earnings in the fourth quarter of 2022 do not preclude[41]—then her average monthly earnings would be lower, which could be relevant to the unsuccessful-work-attempt analysis for her subsequent activity in the first quarter of 2023. In any event, finding more precisely when Plaintiff began, reduced, stopped, and resumed work will be just as crucial on remand as finding why Plaintiff did so.

Finally, remanding for further proceedings, rather than for an award of benefits, is the appropriate remedy.[42] Further proceedings are

---

[41] *See* AR 273.

[42] *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099, 1101 (9th Cir. 2014) (holding that remand for further administrative proceedings is the usual course when a harmful error occurs unless,

necessary because the ALJ must adequately consider whether Plaintiff's work activities constituted unsuccessful work attempts. If such analysis results in a step-one finding in Plaintiff's favor, then the ALJ must proceed with the rest of the five-step sequential evaluation.

## IV. Conclusion

Plaintiff establishes the ALJ erred and substantial evidence does not support the ALJ's step-one finding. On remand, the Appeals Council is to instruct the ALJ to reconsider whether the medical records and other evidence show that Plaintiff made unsuccessful work attempts that meet all the criteria in 20 C.F.R. §§ 404.1574(c), 416.974(c), and, if necessary, proceed through the rest of the sequential evaluation.

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social**

---

among other requirements, further administrative proceedings would serve no useful purpose).

**Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 11 and 15**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 19th day of October 2026.

EDWARD F. SHEA
Senior United States District Judge